OPINION
By the Court,
Becker, J.:
In this case, we consider whether a municipal court has jurisdiction to determine the constitutionality of a misdemeanor law in a criminal proceeding to enforce that law. We conclude that municipal courts have such jurisdiction. We also consider the constitutionality of Las Vegas Municipal Code (LVMC) 6.35.100(1), which prohibits certain physical contact between dancers and patrons in erotic dance establishments. We conclude that LVMC 6.35.100(1) is neither unconstitutionally vague nor overbroad.
We therefore grant the City of Las Vegas’ petition for a writ of certiorari with respect to the constitutionality of LVMC 6.35.100(1) and deny the petition to the extent that it challenges the municipal court’s jurisdiction to consider the constitutionality of the ordinance.

FACTS AND PROCEDURAL HISTORY

Real Parties in Interest (Dancers) were working as erotic dancers in Las Vegas when the City charged them with violating the erotic dance code, LVMC 6.35.100(1), which provides that “[n]o dancer shall fondle or caress any patron, and no patron shall fondle or caress any dancer.” According to the charging documents, the violations included allegations of conduct such as a dancer “rubbing her breasts against a male patron’s face, rubbing her leg against the patron’s groin and grinding her buttocks against the patron’s groin.” Dancers challenged the constitutionality of LVMC 6.35.100(1) in two separate municipal court criminal cases, claiming that the ordinance was unconstitutionally vague and overbroad.[1]
*1046 In each case, the municipal court first determined that it had jurisdiction to determine the constitutionality of the ordinance. The municipal court then concluded that LVMC 6.35.100(1) was unconstitutionally vague because it failed to put a reasonable person on notice as to what conduct was specifically prohibited. In addition, the municipal court concluded that LVMC 6.35.100(1) was unconstitutionally overbroad because it improperly prohibited arguably expressive conduct — touching as part of an erotic dance— that was otherwise protected by the First Amendment of the United States Constitution.
The City appealed the municipal court determinations to the district court, which consolidated the two cases. Following briefing and argument, the district court concluded that the municipal court had jurisdiction to address the constitutionality of LVMC 6.35.100(1) and that the municipal court properly determined that the ordinance was unconstitutionally vague and overbroad.

DISCUSSION

We agree that municipal courts have jurisdiction to consider the constitutionality of misdemeanor laws in proceedings attendant to enforcement of those laws. However, we disagree with the district court’s conclusion regarding the constitutionality of LVMC 6.35.100(1). We hold that the ordinance is neither vague nor overbroad.

Standard for granting certiorari

This court has the authority to review a petition for a writ of certiorari in cases where a district court has considered an ordinance’s constitutionality.[2] Whether an ordinance is constitutional is a question of law subject to de novo review.[3]

Municipal courts have jurisdiction to consider the constitutionality of misdemeanor ordinances that a city is seeking to enforce

The City contends that a district court’s power to issue writs of injunction and prohibition necessarily precludes a municipal court from exercising such power.[4] According to the City, a municipal *1047 court dismissing a case based on the unconstitutionality of the violated ordinance is akin to enjoining or prohibiting prosecution. Therefore, the City argues, only district courts possess jurisdiction to determine the constitutionality of a misdemeanor law.
We find the City’s argument unpersuasive. First, like municipal courts, district courts are not expressly granted jurisdiction to consider the constitutionality of a statute.[5] Such power is derived from a district court’s authority to try cases over which it has original jurisdiction. Municipal courts have original jurisdiction over ordinance-based misdemeanors committed in their respective cities.[6] It would be illogical to conclude that only district courts have jurisdiction to determine the constitutionality of misdemeanor ordinances when municipal courts have original jurisdiction to try cases under misdemeanor ordinances in the first instance.
Second, justice courts also lack the power to issue writs of injunction and prohibition.[7] Nevertheless, in Salaiscooper v. District Court, we concluded that justice courts have jurisdiction to consider constitutional issues presented in criminal misdemeanor proceedings.[8] We similarly conclude that by granting municipal courts jurisdiction over misdemeanors committed in violation of city ordinances,[9] the Legislature has necessarily empowered municipal courts with the authority to resolve constitutional questions raised in the context of such proceedings.[10] Therefore, this court’s holding in Salaiscooper applies equally to municipal courts as it does to justice courts.[11]
Third, if we accept the City’s argument, then any time a municipal court dismissed a case, it would be issuing a writ of in *1048 junction or prohibition in excess of its power. Although the City’s argument addresses only dismissals on constitutional grounds, under the City’s premise, any dismissal would be a type of injunction or prohibition against prosecution. Thus, a municipal court would never have the power to dismiss a case, which is an absurd result that finds no support in the Legislature’s creation of municipal courts.
A violation of LVMC 6.35.100(1) is a misdemeanor over which Las Vegas municipal courts have original jurisdiction.[12] Therefore, while hearing Dancers’ case on the violation of the ordinance, the municipal court in that case also had jurisdiction to consider the constitutionality of LVMC 6.35.100(1).

LVMC 6.35.100(1) is not unconstitutionally vague

Dancers contend that LVMC 6.35.100(1) is unconstitutionally vague because the terms “fondle” and “caress” are not sufficiently clear to give fair notice of what conduct is prohibited and because the terms invite arbitrary and discriminatory enforcement. We disagree.
The constitutionality of a statute, or in this case an ordinance, is a question of law that this court reviews de novo.[13] The challenger of an ordinance has the burden to make a clear showing that it is unconstitutional.[14]
The void-for-vagueness doctrine derives from the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[15] An ordinance is unconstitutionally vague and facially invalid if it “(1) fails to provide notice sufficient to enable ordinary people to understand what conduct is prohibited; and (2) authorizes or encourages arbitrary and discriminatory enforcement.”[16] The question of whether an ordinance is unconstitutionally vague must be determined by the terms of the ordinance at issue.[17] However, *1049 particular words or phrases in an ordinance need not be read in a vacuum.[18] The meaning of an ordinance’s terms may be given context by the statutory scheme of which the ordinance is a part.[19]
When faced with language identical to that in LVMC 6.35.100(1), the United States Court of Appeals for the Ninth Circuit in Kev, Inc. v. Kitsap County concluded that Kitsap County’s ordinance was not unconstitutionally vague.[20] Examining the terms “caressing” and “fondling” in the context of other definitions provided in the ordinance, the Ninth Circuit determined that the phrase “[n]o dancer shall fondle or caress any patron and no patron shall fondle or caress any dancer” included an intent element such that the ordinance prohibited fondling and caressing between dancers and patrons with the intent to sexually arouse or excite.[21] The court concluded that the ordinance therefore gave fair warning of the proscribed conduct and provided adequate law enforcement standards.[22]
The Kev court noted that “‘[c]aressing’ and ‘fondling’ are ordinary, commonly used terms . . . describing] forms of affectionate touching and are not limited in meaning to affectionate touching that is sexual.”[23] However, when viewed “in the context of the other definitions provided in the ordinance, e.g., . . . ‘dancer—a person who dances or otherwise performs for an erotic dance studio and who seeks to arouse or excite the patrons ’ sexual desires ’ ”[24] the court concluded that the ordinance at issue was “easily understood to prohibit sexual conduct between dancers and patrons whom the dancers intend to arouse sexually while the dancers are acting in the scope of their employment at the erotic dance studio.”[25]
Additionally, the court in Kev determined that “to find a violation of the prohibition against ‘caressing’ and ‘fondling,’ prosecu *1050 tors must prove that a dancer or patron engaged in a specified act, i.e., fondling or caressing with the intention to sexually arouse or excite.”[26] The court therefore concluded that the ordinance “provides an adequate standard for law enforcement officers.’ ’[27]
Like the ordinance at issue in Kev, LVMC 6.35.100(1), when viewed in the context of the other ordinances regulating erotic dance establishments, is easily understood to require an intent element. The purpose of Las Vegas’ ordinances regulating erotic dance establishments is to curb the negative secondary effects that may result from such establishments — e.g., increased prostitution, the spread of sexually transmitted diseases, drug and alcohol offenses, fraud, and other criminal activity — while balancing the arguable protection of erotic dance under the First Amendment.[28] The ordinance’s definition of “[e]rotic dance establishment” as “a fixed place of business which emphasizes and seeks, through one or more dancers, to arouse or excite the patrons ’ sexual desires’ ’ expressly recognizes that the purpose of these establishments is to arouse their patrons’ sexual desires, which can lead to negative secondary effects.[29] “Dancer” is defined as “a person who dances, models, personally solicits drinks or otherwise performs for an erotic dance establishment who seeks to arouse or excite the patrons’ sexual desires’’[30]
The public hearings surrounding the enactment of LVMC 6.35.100(1) make clear that the ordinance was intended to prevent conduct such as lap dances and other sexually explicit touching, which frequently leads to negative secondary effects.[31] Testimony presented to the Las Vegas City Council noted that:
[N]o dancer shall fondle or caress any patron; no patron shall fondle or caress any dancer. Lap dancing whereby a dancer or performer sits upon the lap of a patron . . . alludes back to the close physical contact that’s occurring between patrons and the customers. [M]ost of the arrest reports concerning . . . soliciting prostitution in the City concerning these establishments [and] most of the conversations concerning illegal conduct . . . occur in that situation [during lap dances].[32]
*1051 Equally clear is that the City did not intend to prohibit touching incidental to serving a drink or tipping a dancer when done without the intent to sexually arouse or excite. In fact, according to the City Attorney, the City eliminated the word “touch” to ensure that incidental touching would not fall under the ordinance.[33] The City also removed sections that “prohibited giving a gratuity or receiving a gratuity.”[34]
With the above purpose and definitions as context, LVMC 6.35.100(1) prohibits fondling and caressing between dancers and patrons with the intent to sexually arouse or excite. This construction adequately puts dancers and patrons on notice as to what conduct is prohibited. Further, this construction permits touching that is not intended to sexually arouse or excite. Therefore, accidental or incidental touching would not be prohibited under the ordinance.
The above construction also provides an adequate standard for law enforcement because officers will know that, in order to prosecute someone for violating the ordinance, the prosecutor must prove that the dancer or the patron fondled or caressed the other with the intent to sexually arouse or excite. Because LVMC 6.35.100(1), viewed in its appropriate context, provides adequate notice of the prohibited conduct and provides adequate law enforcement standards, it is not unconstitutionally vague.

LVMC 6.35.100(1) is not unconstitutionally overbroad

Dancers next contend that LVMC 6.35.100(1) is unconstitutionally overbroad. Specifically, they argue that even under a construction in which “fondle” and “caress” are limited to mean “fondle and caress with the intent to sexually arouse or excite,” the ordinance unreasonably prohibits conduct that is otherwise protected by the First Amendment. We disagree.
A law is overbroad and void on its face if it “ ‘sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of’ ” protected First Amendment rights.[35] When a law regulates arguably expressive conduct, such as erotic dancing, “the scope of the [law] does not render it unconstitutional unless its overbreadth is not only ‘real, but substantial as well, judged in relation to the [law’s] plainly legitimate sweep.’ ”[36] Even if a law at *1052 its margins proscribes protected expression, an overbreadth challenge will fail if the “ ‘remainder of the statute . . . covers a whole range of easily identifiable and constitutionally prescribable . . . conduct.’ ”[37]
At the outset, we note that there is no First Amendment issue in prohibiting fondling and caressing in a general sense. Neither action is per se expressive conduct that communicates. Arguably, erotic dance is expressive conduct that communicates, which could be deserving of some level of First Amendment protection.[38] If that is so, fondling and caressing may be protected expressive conduct when part of an erotic dance.
Further, even if fondling and caressing as part of an erotic dance are afforded First Amendment protection as expressive conduct that communicates, the protection is not absolute. Such conduct remains subject to reasonable time, place, and manner restrictions.[39] Therefore, to the extent that LVMC 6.35.100(1) reaches conduct arguably protected by the First Amendment, it is not overbroad so long as it is a valid time, place, and manner restriction of the arguably protected conduct that communicates, i.e., fondling and caressing as part of an erotic dance.
A government may regulate the time, place, and manner of protected expressive conduct if the regulations are “(1) content-neutral; (2) narrowly tailored to serve a significant government *1053 interest; and (3) leave open ample alternative channels for communication of the information.’ ’[40]

Content neutrality

An ordinance is content-neutral if its aim is to control the secondary effects of the protected expressive conduct, rather than prohibiting the expression itself.[41] The purpose of Las Vegas’ ordinances regulating erotic dance establishments is to “regulate erotic dance establishments to the end that the many types of criminal activities frequently engendered by such establishments will be curtailed.”[42] The City acknowledges that erotic dance may be a protected form of expression.[43] The ordinances seek to strike a balance between the possible protected expression and the negative secondary effects created by erotic dance establishments.[44] Here, secondary effects which the ordinances seek to combat include “increase in prostitution, venereal disease, drug and alcohol offenses, fraud and other criminal activity.”[45]
We conclude that the ordinances regulating erotic dance establishments in general, and LVMC 6.35.100(1) in particular, are aimed at curbing the negative secondary effects of erotic dancing and not at the expressive conduct itself. Therefore, LVMC 6.35.100(1) is content-neutral.

Narrow tailoring

A time, place, and manner regulation of protected expression must be narrowly tailored to the government’s legitimate content-neutral interests.[46] However, the regulation need not be the least restrictive means of furthering the government’s interest.[47] Dancers assert that LVMC 6.35.100(1) is not narrowly tailored because laws prohibiting prostitution, drug and alcohol offenses, and fraud already exist. Therefore, they argue that regulations of erotic dance establishments could be less restrictive.
*1054 We conclude, however, that LVMC 6.35.100(1) is sufficiently tailored to address the significant interests of the government in preventing the negative secondary activity associated with erotic dance establishments. By prohibiting only fondling and caressing with the intent to sexually arouse or excite, LVMC 6.35.100(1) is narrowly tailored to further the City’s interests in preventing acts of prostitution, the spread of sexually transmitted diseases, drug and alcohol offenses (such as the inconspicuous sale of drugs possible when a dancer and patron fondle and caress each other during a dance), and acts of fraud: “[Jjudges should not supplant the legislature’s role in developing the most appropriate methods for achieving government purposes.”[48] Although various other regulations may be possible in this case, LVMC 6.35.100(1) is narrowly tailored to achieve the City’s purposes.

Alternative channels of communication

Finally, a valid time, place, and manner regulation must leave available alternative channels for communication of the message conveyed by the expressive conduct. Dancers do not assert that LVMC 6.35.100(1) prevents them from conveying their creative message (i.e., dance), only that the ordinance chills their ability to engage fully in their expressive conduct. Nevertheless, even if their message is slightly less effective without caressing and fondling, their message is not significantly impaired.[49] Erotic dancers in Las Vegas “still have reasonable access to their market.”[50]
We therefore conclude that, even though LVMC 6.35.100(1) reaches arguably expressive conduct that communicates — fondling and caressing as part of an erotic dance — which may be protected by the First Amendment, the City may still proscribe such conduct by the legitimate time, place, and manner restrictions embodied in LVMC 6.35.100(1). Therefore, because LVMC 6.35.100(1) only reaches conduct that the City has legitimately proscribed, the ordinance is not unconstitutionally overbroad.

CONCLUSION

For the reasons discussed above, we hold that municipal courts are vested with jurisdiction to resolve constitutional issues arising *1055 in criminal misdemeanor cases. We further hold that LVMC 6.35.100(1) is neither unconstitutionally vague nor overbroad. Accordingly, we grant the City’s petition with respect to the constitutional issues, and we direct the clerk of this court to issue a writ of certiorari instructing the district court to reverse that portion of its order affirming the municipal court’s determination that the ordinance is unconstitutional.
Gibbons, Douglas, Hardesty and Parraguirre, JJ., concur.

 Dancers argued that erotic dance is expressive conduct, which is entitled to protection under the First Amendment of the United States Constitution. Whether erotic dance is afforded full First Amendment protection has yet to be *1046 decided definitively. See Colacurcio v. City of Kent, 163 F.3d 545, 550 (9th Cir. 1998). Nevertheless, the City does not contest Dancers’ assertion that erotic dancing is protected under the First Amendment.

 NRS 34.020(3).

 See Silver v. Dist. Ct., 122 Nev. 289, 292, 129 P.3d 682, 684 (2006).

 See Nev. Const. art. 6, § 6, cl. 1 (granting district court judges the power to issue writs of mandamus, prohibition, injunction, quo warranto, certiorari, and other writs necessary to the exercise of their jurisdiction).

 See id.

 NRS 5.050(2).

 See NRS 4.370.

 117 Nev. 892, 900-01, 34 R3d 509, 514-15 (2001).

 See NRS 5.050(2).

 Salaiscooper, 117 Nev. at 900, 34 P.3d at 514.

 We note that we have previously held that municipal courts lack jurisdiction to determine the constitutionality of ordinances imposing a licensing tax and ordinances imposing a court assessment fee. In Re Dixon, 40 Nev. 228, 161 P. 737 (1916), overruled in part by Salaiscooper, 117 Nev. at 901, 34 P.3d at 515; McKay v. City of Las Vegas, 106 Nev. 203, 205, 789 P.2d 584, 585 (1990), overruled in part by Salaiscooper, 117 Nev at 901, 34 P.3d at 515. See also NRS 5.050(4). As we stated in Salaiscooper, however, neither prior holding “should be read for the proposition that municipal or justice courts have no authority whatever to consider issues of constitutional dimension.” Salaiscooper, 117 Nev. at 900, 34 P.3d at 515. Dixon and McKay are limited on their facts to cases involving taxes and assessments, and their holdings are now expressly embodied in NRS 5.050(4).

 See LVMC 6.35.170; NRS 5.050(2).

 See Sheriff v. Burdg, 118 Nev. 853, 857, 59 P.3d 484, 486 (2002) (citing SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993)).

 See id. (citing Childs v. State, 107 Nev 584, 587, 816 P.2d 1079, 1081 (1991)).

 Id.

 City of Las Vegas v. Dist. Ct., 118 Nev. 859, 862, 59 P.3d 477, 480 (2002).

 See Mangarella v. State, 117 Nev. 130, 137, 17 P.3d 989, 993 (2001).

 See id.

 See Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1057-58 (9th Cir. 1986).

 Id. at 1058.

 See id. at 1057-58.

 See id. Dancers attempt to distinguish Kev on the ground that Kitsap County’s erotic dance ordinance also required dancing to take place at least ten feet from patrons on a raised platform. See id. at 1061. This argument lacks merit. The court in Kev did not rely on the distance requirement when determining the appropriate definitions of “fondle” and “caress.” See id. at 1057-58. The intent element provided by the context surrounding LVMC 6.35.100(1) adequately satisfies the requirements to thwart a vagueness challenge.

 Id. at 1057 (citing Webster’s Third New International Dictionary 339, 883 (1971)).

 Id. (quoting Kitsap County Ordinance No. 92-A, § 2c) (emphasis added in Kev).

 Id.

 Id. at 1057-58.

 Id. at 1058.

 See LVMC 6.35.010(A); LVMC 6.35.020.

 LVMC 6.35.030(E) (emphasis added).

 LVMC 6.35.030(B) (emphasis added).

 See City of Las Vegas, Recommending Committee Minutes, Combined Verbatim Transcript—Item 5: Bill 95-40, Item 6: Bill 95-41 and Item 7: Bill 95-42 (July 31, 1995).

 Id. at 12 (statement of Lt. Bill Young commenting on section (j) of Bill 95-40, which became LVMC 6.35.100(1)).

 Id. at 4 (statement of City Attorney Jerbic).

 Id. at 5.

 City of Las Vegas, 118 Nev. at 863 n.14, 59 P.3d at 480 n.14 (quoting Thornhill v. Alabama, 310 U.S. 88, 97 (1940)).

 Osborne v. Ohio, 495 U.S. 103, 112 (1990) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)).

 Id. (quoting New York v. Ferber, 458 U.S. 747, 770 n.25 (1982)) (internal quotation marks omitted).

 See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66 (1991) (plurality opinion) (stating that Supreme Court precedent indicated that “nude dancing ... is expressive conduct within the outer perimeters of the First Amendment, though . . . only marginally so”); id. at 584 (Souter, J., concurring) (“ ‘[Society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate.’” (quoting Young v. American Mini Theatres, 427 U.S. 50, 70 (1976) (plurality opinion))); Colacurcio, 163 F.3d at 550 (“The fragmented nature of Supreme Court opinions dealing with nude dancing in particular and sexually explicit but non-obscene conduct in general has resulted in a lack of clear guidance on the level of First Amendment protection afforded to this type of expression.”); Erwin Chemerinsky, Constitutional Law § 11.3.4.4, at 838-40 (1st ed. 1997) (discussing that the Supreme Court has historically treated nude dancing as being “low value” speech).

 See Barnes, 501 U.S. at 565-72 (applying time, place, and manner analysis in a nude-dancing context to an ordinance proscribing public nudity, which the Indiana Supreme Court construed as precluding nudity in places of public accommodation); see also Kev, 793 F.2d at 1058-62 (applying time, place, and manner analysis to erotic dance ordinances after determining that topless dancing is protected expression).

 Colacurcio, 163 F.3d at 551 (citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). We note that the test articulated above is the equivalent of the test set out in United States v. O’Brien, 391 U.S. 367 (1968), which Dancers rely on. See Colacurcio, 163 F.3d at 551 n.4.

 Colacurcio, 163 F.3d at 551.

 LVMC 6.35.020.

 Id.

 Id.

 LVMC 6.35.010(A).

 Colacurcio, 163 F.3d at 553.

 Id.

 Id.

 See Kev, 793 F.2d at 1061.

 Id. (citing Ellwest Stereo Theatres, Inc. v. Wenner, 681 F.2d 1243, 1246 (9th Cir. 1982)).